IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID EAGLE and BRANDY EAGLE,

        Plaintiffs,

v.

USA DENT COMPANY, LLC and DENNIS
SANDERS,

        Defendants.

CASE NO. 20-cv-01146-JWB-TJJ

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Amended Motion for Leave to File an Amended Answer and Add Counterclaims (ECF No. 56). Defendants request an order under Fed. R. Civ. P. 15(a) granting them leave to file their proposed First Amended Answer and Counterclaims, which seeks to add new affirmative defenses and two new counterclaims for comparative implied indemnity and implied contractual indemnity against Brandy Eagle. Plaintiffs oppose the motion in part, arguing the proposed amendments are unduly prejudicial and futile. As explained below, the motion is granted in part and denied in part.

## I.      PROCEDURAL HISTORY

Plaintiffs David and Brandy Eagle bring this wage and hour and worker classification (employee versus independent contractor) action under the Fair Labor Standards Act ("FLSA") and the Kansas Wage Payment Act ("KWPA") against Defendants USA Dent Company, LLC ("USA Dent") and Dennis Sanders ("Sanders"). Plaintiffs claim Defendants violated the FLSA by failing to pay them minimum wage (Count I), violated the KWPA by failing to pay earned wages (County II), and breached agreements to pay them for work performed (Count III).

Defendants filed their original Answer (ECF No. 6) on October 26, 2020. They allege Plaintiffs, who are husband and wife, worked with Defendants in various capacities in 2018 and 2019. Brandy Eagle was employed by Defendants and performed various tasks, both inside and outside the USA Dent office, including accounting, managing projects, and other tasks as assigned. David Eagle, doing business as Eagle Claims Solutions, LLC, assisted USA Dent with estimating hail and wind damage at car dealerships across the United States.

The December 15, 2020 Scheduling Order (ECF No. 10) set a February 5, 2021 deadline for filing motions to amend the pleadings. After two joint motions by the parties to amend the scheduling order deadlines, with an unsuccessful mediation in the interim, the Court entered a Second Amended Scheduling Order (ECF No. 37) that extended the case deadlines, including an extension of the deadline for filing motions to amend the pleadings to August 13, 2021.

On August 13, 2021, Defendants filed a Motion for Leave to File Amended Answer and Add Counterclaims (ECF No. 38). The proposed amended answer sought to add affirmative defenses and counterclaims against Brandy Eagle for comparative implied indemnity and implied contractual indemnity. Defendants asserted their proposed amendment was due to their discovery of information obtained during Plaintiffs' depositions.

On November 3, 2021, Defendants filed a motion to stay (ECF No. 45) the case pending resolution of their appeal of a bankruptcy court order. The Court granted the motion as unopposed on December 1, 2021 (ECF No. 51) and stayed the case pending a final ruling in the bankruptcy appeal.

On August 2, 2022, the Court held a scheduling conference and entered the Third

Amended Scheduling Order (ECF No. 55) setting an August 9, 2022 deadline for Defendants to

file their amended motion for leave to file amended answer and add counterclaims. Defendants

filed their Amended Motion for Leave to File an Amended Answer and Add Counterclaims

(ECF No. 56) by this deadline. The Court therefore finds Defendants' motion was timely filed.[1]

## II.      LEGAL STANDARD FOR AMENDMENT OF THE PLEADINGS

Federal Rule of Civil Procedure 15(a) governs the amendment of the pleadings before

trial. Under Rule 15(a)(1), a party may amend its pleading once as a matter of course within:

> (A) 21 days after serving it, or
> (B) if the pleading is one to which a responsive pleading is required, 21 days after
> service of a responsive pleading or 21 days after service of a motion under Rule
> 12(b), (e), or (f), whichever is earlier.

"In all other cases, a party may amend its pleading only with the opposing party's written

consent or the court's leave."[2]  Rule 15(a)(2) instructs that the court "should freely give leave" to

amend a pleading "when justice so requires." A party is typically granted leave to amend its

pleading under this rule unless there is "a showing of undue delay, undue prejudice to the

opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendment

previously allowed, or futility of amendment."[3]  A proposed amendment is futile if the amended

---

[1] Thus, Defendants are not required to show "good cause" under Fed. R. Civ. P. 16(b)(4) in addition to satisfying the Rule 15(a) standard for amendment.

[2] Fed. R. Civ. P. 15(a)(2).

[3] *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005).

complaint or answer containing a counterclaim would be subject to dismissal.[4]  The Tenth

Circuit has recognized that Rule 15 is intended to provide litigants "the maximum opportunity

for each claim to be decided on its merits rather than on procedural niceties."[5]

## III.    DEFENDANTS' PROPOSED AMENDMENT OF THEIR ANSWER

Defendants request leave to file their proposed First Amended Answer to Plaintiffs'

Complaint for Damages and Counterclaims Against Brandy Eagle. Specifically, they seek to add

paragraphs 7 through 14 to the section entitled, "Defenses, Affirmative Defenses, and

Statements," which would add the following defenses: judicial estoppel (¶¶ 8–9), statute of

frauds (¶ 11), unclean hands (¶ 12), *in pari delicto* (¶13), and filing suit against the wrong entity

(¶ 14). Defendants also seek leave to add new counterclaims for comparative implied indemnity

and implied contractual indemnity against Brandy Eagle, as well as additional facts in support of

those counterclaims (¶¶ 16–25).

Plaintiffs object to Defendants' proposed amendment adding paragraphs 8–9 and 11–14

to the "Defenses Affirmative Defenses and Statements" section, and adding the two

counterclaims on the basis the amendment is futile and would be unduly prejudicial. Plaintiffs do

not object to Defendants adding paragraphs 7 and 10.

---

[4] *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008).

[5] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).

## A.     ARE THE PROPOSED AFFIRMATIVE DEFENSES FUTILE?

The party opposing the amendment of a pleading bears the burden of establishing its

futility.[6]  When a defendant moves to amend an answer to add an affirmative defense, futility is

examined in the context of a motion to strike under Fed. R. Civ. P. 12(f), which permits the

striking of an "insufficient defense."[7]  Within the meaning of Rule 12(f), a defense is insufficient

if it cannot succeed, as a matter of law, under any circumstances."[8]  To warrant striking a

defense, its insufficiency must be "clearly apparent" and "no factual issues exist that should be

determined in a hearing on the merits."[9]

When the futility analysis implicates a Rule 12(f) analysis, the party opposing the

amendment faces a demanding burden.[10]  Even if striking a defense is warranted, the court may

grant leave to amend to address the insufficiency.[11]  In assessing the futility of a proposed

affirmative defense, the court does not have to determine whether the affirmative defense "will

ultimately prevail at trial," but rather the amendment is futile if there is "no set of facts upon

---

[6] *Bank Midwest v. R.F. Fisher Electric Co., LLC*, No. 19-2560-JAR-GEB, 2021 WL 38008, at *6 (D. Kan. Jan. 5, 2021).

[7] *Livingston v. Sodexo, Inc. and Affiliated Co.*, No. 11-4162-EFM, 2012 WL 2045292, at *2 (D. Kan. June 6, 2012).

[8] *Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-CV-2381-JWL-GLR, 2011 WL 3847076, at *6 (D. Kan. Aug. 29, 2011).

[9] *Id.* (quoting *Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 649 (D. Kan. 2009)).

[10] *Id.*

[11] *Id.*

which defendants could possibly prevail."[12]   Once the factual record is more fully developed, the

plaintiff may, of course, challenge the defendant's affirmative defenses in a motion for summary

judgment.[13]

Plaintiffs object on futility grounds to Defendants' proposed affirmative defenses of

judicial estoppel, statute of frauds, unclean hands, and *in pari delicto*. Each will be discussed

below.

### 1.      Judicial Estoppel Affirmative Defense

Defendants seek leave to amend their answer to add a judicial estoppel affirmative

defense. Specifically, they request leave to add the following two paragraphs to their answer:

> Under the theory of judicial estoppel, Plaintiffs' claims should be dismissed
> because of the numerous times Plaintiffs state in their bankruptcy filings that they
> are not owed any money from anyone for unpaid wages and do not have any
> existing claims against third parties.

> Under the theory of judicial estoppel, Plaintiffs' claims should be dismissed for
> Plaintiffs not identifying/misrepresenting their claims in this lawsuit in their
> Chapter 13 bankruptcy case # 21-20368 filed in the United States Bankruptcy Court
> for the District of Kansas.[14]

Plaintiffs argue Defendants' proposed addition of the affirmative defense of judicial

estoppel is futile as a matter of law because there is no final adjudication in the bankruptcy case

and no evidence that Plaintiffs proposed a "contradictory argument" at any time. According to

---

[12]  *Gardner Group, LLC v. Commonwealth Land Title Ins. Co.*, No. 15-9934-CM, 2016 WL
11627328, at *1 (D. Kan. May 9, 2016).

[13]  *Id.*

[14]  Defs.' Proposed First Am. Answer (ECF No. 57-1) at 7.

Plaintiffs, judicial estopped requires that they induce a judgment. Their bankruptcy plan has not

been confirmed and remains subject to Trustee and court modification and approval. Plaintiffs

assert that despite the amendment of their plan in the bankruptcy case "to more accurately

describe the amounts they seek in this case," there remains no confirmation of a plan and their

bankruptcy has not concluded.

Defendants argue their proposed judicial estoppel affirmative defense does not require a

judgment or final adjudication, or confirmation of the debtors' bankruptcy plan. Instead,

Defendants argue judicial estoppel applies in Chapter 13 bankruptcy proceedings both before and

after a bankruptcy plan has been confirmed.

The "purpose [of the doctrine of judicial estoppel] is to protect the integrity of the judicial

process by prohibiting parties from deliberately changing positions according to the exigencies

of the moment."[15]  In the Tenth Circuit, three factors typically inform the judicial estoppel

analysis:

> (1) The party against whom judicial estoppel is to be invoked seeks to rely on a
> position that is clearly inconsistent with its earlier position;
> (2) The party has succeeded in persuading a court to accept its earlier position, such
> that judicial acceptance of an inconsistent position would create the impression that
> either the first or the second court was misled; and

---

[15] *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007). The parties' arguments regarding judicial estoppel are based almost exclusively on state law. However, as in *Eastman*, Plaintiffs' federal and state law claims in this case must be analyzed in the context of federal principles. "The doctrine of federal judicial estoppel is foremost designed to protect the federal judicial process." *Id*. Plaintiffs' bankruptcy is a federal matter; they filed their FLSA and pendent state law claims in federal court; the alleged judicial estoppel affirmative defense arises here; and it is this Court that is interested in protecting its judicial process. "Simply put, a federal court's ability to protect itself from manipulation should not depend upon the law of the state under which some or all the claims arise." *Id.* (citations omitted).

(3) The party seeking to assert the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.[16]

In *Reese v. HomeAdvisor, Inc.*,[17] the district court addressed the equitable remedy of judicial estoppel under facts similar to those alleged in this case. The defendant in the *Reese* case sought dismissal of the entire action on the basis of judicial estoppel due to the plaintiff's failure to disclose her claims against it in her bankruptcy proceedings.[18] The court granted the motion to dismiss, specifically noting the plaintiff's bankruptcy proceeding remained open as of the date of the court's order.[19]

Plaintiffs fail to meet their burden to show the futility of Defendants' proposed affirmative defense of judicial estoppel. Plaintiffs cite no authority for their oft-repeated argument that there must be a final judgment in the bankruptcy case in order for Defendants to assert judicial estoppel as an affirmative defense. The *Reese* case indicates otherwise.[20] It is worth reiterating the legal standard applicable to the amendment requested here. Under Rule 12(f), a defense is insufficient if it cannot succeed, as a matter of law, under any circumstances.

---

[16] *Higgins v. Potter*, No. 08-2646-JWL, 2010 WL 11526772, at *2 (D. Kan. Aug. 20, 2010) (citing *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005)).

[17] No. 2:20-CV-02566-JAR-GEB, 2021 WL 3129447, at *4–*8 (D. Kan. July 23, 2021).

[18] *Id.* at *4.

[19] *Id.* at *3.

[20] *See also Higgins,* 2010 WL 11526772 (granting summary judgment to the defendant based on judicial estoppel, even though the plaintiff's Chapter 13 bankruptcy was ongoing, she would not receive a discharge unless and until she successfully completed her approved payment plan, and she disclosed her Title VII race discrimination lawsuit to the bankruptcy trustee prior to the defendant's filing of the summary judgment motion).

For purposes of ruling the motion to amend, this Court is not tasked with determining whether the judicial estoppel affirmative defense will ultimately prevail at trial, Rather, the Court finds at this stage of the proceedings, based on the facts Defendants seek to allege in their amended answer, the Court cannot determine that Defendants could not meet the threshold showing for an affirmative defense of judicial estoppel. Defendants will therefore be granted leave to amend their answer to assert this affirmative defense.

### 2.      Statute of Frauds Affirmative Defense

The statute of frauds requires that any "agreement that is not to be performed within the space of one year from the making thereof" must be in writing or it is not enforceable.[21] Plaintiffs allege in Count III of the Complaint that Defendant USA Dent entered into an agreement to pay David Eagle commission for work performed (¶ 37), the agreement was valid and binding (¶ 39), and Defendants materially breached the agreement (¶ 41). Defendants seek to amend their answer to assert the statute of frauds bars David Eagle from recovering under his breach of contract claim.

Plaintiffs oppose allowing Defendants to add a statute of frauds affirmative defense on futility grounds, arguing the statute of frauds only encompasses those contracts that "cannot possibly be completed within a year,"[22] and contracts of uncertain duration are excluded from

---

[21] K.S.A. 33-106.

[22] Pls.' Resp. (ECF No. 63) at 15 (citing *Nutt v. Knutson*, 245 Kan. 162, 164, 795 P.2d 30 (1989)).

the statute of frauds.[23]  They argue there is no allegation in Defendants' proposed amended

answer or the complaint suggesting David Eagle's employment was fixed for a term beyond a

year. Even though he worked for longer than a year, his contract could have been performed well

within the space of a year.

The Court finds Plaintiffs fail to meet their burden to show the futility of Defendants'

proposed statute of frauds affirmative defense amendment. To the extent Plaintiffs' opposition is

based upon a failure to plead sufficient facts regarding the performance length and terms of

Defendant USA Dent's agreement with David Eagle, discovery in the case may shed light on

these issues and whether the agreement could not possibly be performed within a year. As with

the judicial estoppel affirmative defense, the Court is not tasked with determining whether the

statute of frauds affirmative defense will ultimately prevail at trial. Rather, at this stage of the

proceedings, the Court cannot determine that Defendants could not meet the threshold showing

for a statute of frauds affirmative defense. The Court will grant Defendants leave to amend their

answer to assert a statute of frauds affirmative defense.

### 3.        Unclean Hands and *In Pari Delicto* Affirmative Defenses

Defendants also seek to add the affirmative defenses of unclean hands and *in pari delicto*.

Plaintiffs oppose allowing these defenses to be added, arguing nothing in their Complaint or

Defendants' motion alleges Plaintiffs are not actually owed the wages they allege. They argue

they have not taken an inconsistent position on the wages owed to them by Defendants, and

---

[23] *Id.* (citing *Augusta Bank & Trust v. Broomfield*, 231 Kan. 52, 59, 643 P.2d 100 (1982)).

nothing about the bankruptcy schedules or amendments is inconsistent with their allegations.

Plaintiffs claim they have not benefitted from the deprivation of their wages to help with their

bankruptcy case, and they have not hidden or disposed of asserts in an attempt to avoid a

creditor's reach in their bankruptcy.

In their reply, Defendants argue their affirmative defenses of unclean hands and *in pari delicto* are not based upon Plaintiffs' bankruptcy. Instead, these defenses are based upon the

illegal and unconscionable actions of David Eagle intentionally damaging vehicles with a drill

bit while providing estimates for Defendant USA Dent. In addition, they are based upon Brandy

Eagle's actions in downloading the "My Documents" folder of the shared drive at Defendant

USA Dent's offices to a USB thumb drive and taking it home a few days before her employment

was terminated.

"Unclean hands" is an equitable defense that a party cannot obtain affirmative relief in

equity with respect to a transaction in which the party has been guilty of inequitable conduct.[24]

The related doctrine, *in pari delicto,* "is rooted in the common-law notion that a plaintiff's

recovery may be barred by his own wrongful conduct."[25]

Plaintiffs have not met their burden to demonstrate that Defendants' proposed affirmative

defenses of unclean hands and *in pari delicto* cannot succeed as a matter of law under the facts as

---

[24] *Admin. Comm. of Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 302 F.Supp.2d 1267, 1281 (D. Kan. 2004) (quoting *T.S.I. Holdings, Inc. v. Jenkins*, 260 Kan. 703, 720, 924 P.2d 1239, 1250 (1996)).

[25] *Mosier v. Callister, Nebeker & McCullough,* 546 F.3d 1271, 1275 (10th Cir. 2008) (quoting *Pinter v. Dahl*, 486 U.S. 622, 632 (1988)).

11

argued by Defendants. Accordingly, the Court will grant Defendants leave to amend their answer to add these proposed affirmative defenses.

### B.   ARE THE PROPOSED COUNTERCLAIMS FUTILE?

Defendants also seek to amend their answer to assert two new counterclaims against Brandy Eagle for (1) comparative implied indemnity and (2) implied contractual indemnity, including additional facts in support of the counterclaims. Plaintiffs argues Defendants' proposed counterclaims are futile because Brandy Eagle cannot be liable under the FLSA, the KWPA, or for breach of contract; and Defendants' claims for indemnity are not ripe.

When a party argues futility with respect to a counterclaim, the court accepts the facts alleged in the counterclaim as true to determine whether the proposed claim would survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[26]  "A proposed amendment is futile if the amended answer containing a counterclaim would be subject to dismissal."[27]  When utilizing this standard, "the court must accept as true all well-pleaded factual allegations and view them in the light most favorable to the pleading party."[28]  Only if the court finds the proposed counterclaims "do not contain enough facts to state a claim for relief that are plausible on their face or [they] otherwise fail as a matter of law" should the court find the amendment futile.[29]

---

[26] *Layne Christensen,* 2011 WL 3847076, at *5.

[27] *Anderson*, 521 F.3d at 1288.

[28] *Bank Midwest v. R.F. Fisher Elec. Co., LLC*, No. 19-2560-JAR-GEB, 2021 WL 38008, at *6 (D. Kan. Jan. 5, 2021).

[29] *Id.*

1.      **Proposed Counterclaim for Comparative Implied Indemnity**

Defendants request leave to assert a counterclaim for comparative implied indemnity

against Brandy Eagle. In support, their proposed answer alleges the following:

> Brandy Eagle's negligence and actions contributed to the causes of action and
> alleged damages claimed by David Eagle against USA Dent Company, LLC and
> Dennis Sanders in Plaintiffs' Complaint: (1) Count I: Failure to Pay Minimum
> Wage in Violation of FLSA; (2) Count II: Failure to Pay Earned Wages in
> Violation of the KWPA; and (3) Count III: Breach of Contract.
>
> Brandy Eagle is liable for her negligence if David Eagle was incorrectly classified
> as an independent contractor.
>
> As a consequence of Brandy Eagle's negligence, Defendant has suffered damages
> if David Eagle was incorrectly classified as an independent contractor.
>
> Brandy Eagle must contribute/indemnify USA Dent Company, LLC and Dennis
> Sanders for her percentage of fault for any damages recovered by David Eagle if
> David Eagle was incorrectly classified as an independent contractor.

Defendants further allege in support of their counterclaim that part of Brandy Eagle's job

was to take actions to ensure all the people who would travel to car dealerships across the

country performing hail and wind damage estimates for USA Dent were independent contractors

and were correctly classified as independent contractors.(¶ 17). Brandy Eagle was tasked with

assisting in the preparation of subcontracts for the workers—including her husband David

Eagle—collecting W9s for the workers, collecting invoices from workers for payments on jobs,

collecting expense reports from workers, and performing any other tasks necessary to ensure the

workers were correctly classified as independent contractors. (¶ 18). Brandy Eagle prepared the

individual contracts for each worker for engagements with USA Dent, including her husband

David Eagle's contract. (¶ 20). Brandy Eagle prepared the invoices for Eagle Claims Solutions,

LLC to be paid by USA Dent for the work David Eagle performed to estimate hail and wind damage to vehicles at dealerships. (¶ 23).

Kansas law on indemnity claims has been summarized as follows:

> Kansas recognizes three types of indemnity claims: (1) express contractual indemnity; (2) implied contractual indemnity; and (3) comparative implied indemnity. Express contractual indemnity arises where there is a contract of indemnity, such as a hold harmless agreement. Implied contractual indemnity arises when one is compelled to pay what another party ought to pay; generally, when a party without fault is made to pay for a tortious act of another and seeks indemnity from the party at fault. Although this theory has frequent viability in the context of respondeat superior, it is not limited to this context. *See, e.g., Haysville U.S.D. No. 261 v. GAF Corp.*, 233 Kan. 635, 666 P.2d 192 (1983). Comparative implied indemnity is an equitable remedy available to a tortfeasor among other tortfeasors, who by settling with the plaintiff or paying a judgment, pays the other tortfeasors' share of liability. *Schaefer v. Horizon Building Corp.,* 26 Kan.App.2d 401, 403, 985 P.2d 723, 725 (1999).[30]

Plaintiffs argue Defendants' proposed counterclaims are futile because there are no claims under federal or state law that allow an employers to sue its employee for "essentially negligence," for not doing her job well or performing it in a negligent fashion.[31]  Plaintiffs further argue any attempt to impute Defendants' legal liability against a former employee are legally unsustainable, as "it's just negligence"[32]  and Brandy Eagle cannot be liable under the FLSA, KWPA, or for breach of contract because she would not be an "employer" as defined by the FLSA and KWPA. They also argue Defendants' claims for indemnity are not ripe as they

---

[30]  *MWCB Rock Rd., LLC, v. C&W Fac. Svcs., Inc.* No. 21-1022-SAC-GEB, 2022 WL 168221, at *3 (D. Kan. Jan. 19, 2022).

[31]  Pls.' Resp. (ECF No. 63) at 4.

[32]  *Id.* at 5.

have not settled their claims and judgment has not been entered on those claims.

Defendants argue Kansas is a comparative negligence state and the comparative negligence statute, K.S.A. 60-238a, is designed to place the loss upon those who cause it. They allege Brandy Eagle's job was to ensure contractors, including her husband David Eagle, were correctly classified as independent contractors. David Eagle is claiming in this case that Defendants incorrectly classified him as an independent contractor. Defendants acknowledge their proposed comparative implied indemnity counterclaim is being made prior to settlement or judgment, but argue the counterclaim should be allowed because it must be asserted in this lawsuit to put Brandy Eagle on notice of the counterclaim and to comply with the one-action rule, citing *Gaulden v. Burlington Northern, Inc.*[33]

Comparative implied indemnity is an "equitable remedy available to a single defendant, among a number of tortfeasors, who by settling with the plaintiff or paying a judgment, pays the other tortfeasors' share of liability."[34]  There is a fundamental flaw in Defendants' counterclaim. Plaintiffs' claims are for wage and hour violations under the FLSA and KWPA and for breach of contracts. Plaintiffs do not assert any tort claims against Defendants. David Eagle is not asserting

[33]  654 P.2d 383, 391, 232 Kan. 205, 214 (1982).

[34]  *Schaefer,* 26 Kan.App.2d at 403, 985 P.2d at 725. *See also MWCB Rock Rd.,* 2022 WL 168221, at *3; and *Water Dist. No. 1 of Johnson Cnty., Kan. v. S.J. Louis Constr., Inc.,* No. 21-2070-KHV, 2021 WL 5084180, at *4 (D. Kan. 2021) ("comparative implied indemnity [exists] where one of multiple tortfeasors pays another's share of liability."). Although the Kansas Supreme Court, in *Teepak, Inc. v. Learned*, 237 Kan. 320, 328, 699 P.2d 35, 42 (1985), criticized the use of the term "joint tortfeasors," the more recent cases cited here continue to include the reference to "tortfeasors" in explaining comparative implied indemnity.

a tort claim against Defendants, which Defendants could settle and then seek comparative

implied indemnity against Brandy Eagle. As Plaintiffs note, Defendants are attempting to spin

what is essentially a negligence claim against its former employee, Brandy Eagle, into an

indemnity claim.

Defendants' briefing only highlights the flaw in their proposed comparative implied

indemnity counterclaim. All of the cases cited in their reply in support of this counterclaim are

comparative negligence cases.[35]  They cite no FLSA, contract, or other non-tort cases with

underlying claims similar to those asserted in this case, and after extensive research the Court has

found none, in which comparative implied indemnity has been applied.

Accordingly, the Court finds Defendants' proposed comparative implied indemnity

counterclaim would be futile. Even accepting the facts Defendants allege in support of the

counterclaim as true, the Court finds this proposed counterclaim does not state a claim for relief

that is plausible on its face and it fails as a matter of law. Therefore, the requested amendment to

add the counterclaim will be denied.

**2.      Proposed Counterclaim for Implied Contractual Indemnity**

Defendants also seek leave to add a counterclaim for implied contractual indemnity.

They allege the following in support of this proposed counterclaim:

> Brandy Eagle's negligence and actions caused the alleged damages claimed by
> David Eagle against USA Dent Company, LLC and Dennis Sanders in Plaintiffs'
> Complaint: (1) Count I: Failure to Pay Minimum Wage in Violation of FLSA; (2)

---

[35]  See Defs.' Reply (ECF No. 64) at 9-10. Defendants cite no legal authority regarding this issue in their initial memorandum in support of their motion.

Count II: Failure to Pay Earned Wages in Violation of the KWPA; and (3) Count III: Breach of Contract.

Brandy Eagle's actions were active, but Dennis Sanders and USA Dent Company, LLC's actions were passive.

Brandy Eagle is liable for her negligence if David Eagle was incorrectly classified as an independent contractor.

As a consequence of Brandy Eagle's negligence, Defendant has suffered damages if David Eagle was incorrectly classified as an independent contractor.

In Kansas, an action for implied contractual indemnity arises where a principal is compelled to pay a third person for the negligent acts of its agent.[36]  In *Kennedy*,[37]  the Kansas Supreme Court stated "[a] contract of indemnity may be implied when one is compelled to pay what another party ought to pay." The court also stated an implied contract of indemnity may arise when "one personally without fault is made to pay for the tortious acts of another."[38]

The doctrine of implied indemnity is particularly applicable in cases of liability of a principal in respondeat superior for the acts of an agent or employee.[39]  Under the doctrine of respondeat superior, the fault of the employee is imputed to the employer without requiring fault

---

[36] *United States Fid. & Guar. Co. v. Sulco, Inc.*, 939 F. Supp. 820, 824 (D. Kan. 1996) (citing 42 C.J.S. Indemnity §§ 31–32).

[37] *Kennedy v. City of Sawyer*, 228 Kan. 439, 455, 618 P.2d 788, 799 (1980).

[38] 228 Kan. at 455, 618 P.2d at 799.

[39] *Bick v. Peat Marwick & Main*, 14 Kan.App.2d 699, 709, 799 P.2d 94, 102 (1990) (citing *Kennedy*, 228 Kan. at 455, 618 P.2d at 799). *See also St. Francis Reg'l Med. Ctr., Inc. v. Critical Care, Inc.*, 997 F. Supp. 1413, 1431 (D. Kan. 1997) ("The classic example of implied indemnity is that which exists between an employer who has been held vicariously liable for the torts of its employee and the employee.").

17

or knowledge on the part of the employer.[40]  The employer may recover from the employee because the employer has been made to pay for the employee's tortious acts.[41]

Plaintiffs have not shown Defendants' proposed counterclaim for implied contractual indemnity to be futile. Defendants allege Brandy Eagle's negligence and actions caused the damages claimed in this case, their actions were passive, Brady Eagle is liable for her negligence if David Eagle is found to be incorrectly classified, and they will suffer damages as a result. Defendants have also alleged an employer-employee relationship between Defendant USA Dent and Brandy Eagle and Defendants' potential liability arising from Brandy Eagle's alleged actions in incorrectly classifying David Eagle as an independent contractor. Defendants' proposed indemnity counterclaim against Brandy Eagle could therefore be implied by virtue of her employment relationship with Defendant USA Dent. Defendants need not prove their allegations to be granted leave to amend the pleadings to assert the counterclaim. If it is determined that Defendant USA Dent is vicariously liable for the negligence of its former employee, Brandy Eagle, for incorrectly classifying David Eagle as an independent contractor, then Defendant USA Dent may have an independent claim for implied contractual indemnification provided it can show it was without fault.[42]

---

[40]  *St. Francis,* 997 F. Supp. at 1431.

[41]  *Id.*

[42]  *See United States Fid. & Guar.,* 939 F. Supp. at 825 ("The court finds that where, as in this case, vicarious liability gives rise to a claim for implied contractual indemnity, Kansas law requires the [indemnitee] to be faultless in order to recover; that is, [the indemnitee]'s liability must be solely derivative.").

None of Plaintiffs' arguments are persuasive in showing this counterclaims is futile as a matter of law or fails to state a plausible counterclaim for implied contractual indemnity. The standard for allowing amendment of the pleadings is not whether Defendants will ultimately prevail on their proposed counterclaim, but whether they are entitled to offer evidence to support their allegations. Whether this counterclaim will prevail will be a question for the trier of fact at a later date. Viewing all reasonable inferences that can be drawn from the counterclaim as true and viewed in the light most favorable to Defendants, the Court finds Defendants have sufficiently stated a counterclaim for implied contractual indemnity against Brandy Eagle. Defendants are therefore granted leave to amend their answer to assert a counterclaim for implied contractual indemnity against Brandy Eagle.

### C.       DOES THE AMENDMENT PREJUDICE PLAINTIFFS?

Finally, the Court considers whether granting Defendants leave to amend their answer and to add a counterclaim for implied contractual indemnity at this stage of the case would unduly prejudice Plaintiffs. Defendants initially sought leave to amend back on August 13, 2021, a couple of months after their counsel discovered new information during the June 15, 2021 deposition of David Eagle. Plaintiffs have been on notice of Defendants' intent to amend their answer and add this implied indemnity counterclaim against Brandy Eagle for nearly a year before the present amended motion was filed. In any event, the Court finds that any potential prejudice to Plaintiffs—if they decide to conduct additional discovery on Defendants' new factual allegations, affirmative defenses, and implied contractual indemnity counterclaim—can be cured through additional discovery completed prior to the current February 15, 2023

discovery deadline.

**IT IS THEREFORE ORDERED THAT** Defendants' Amended Motion for Leave to File an Amended Answer and Add Counterclaims (ECF No. 56) is granted in part and denied in part. **<u>Within seven (7) days of the date of this Order</u>**, Defendants shall file their proposed First Amended Answer to Plaintiffs' Complaint for Damages and Counterclaims Against Brandy Eagle, after removing the proposed counterclaim for comparative implied indemnity.

IT IS SO ORDERED.

Dated December 23, 2022, at Kansas City, Kansas.

_Teresa J. James_

Teresa J. James
U. S. Magistrate Judge
